Good morning, Your Honors. Good morning. Please, the Court, my name is Gerard Andrew Corsini and I'm the pro se appellant, and this case involves corruption, both at the heart of the complaint and in the criminal prosecution, the conviction of which is the subject of trial. As we all know, District Attorney Vance has been investigated by the Attorney General, and the kind of conduct that he is being investigated for, which involves either action or inaction for powerful people, is at the heart of this case, and I've been arguing it for years. Unfortunately, my lawyer did not file my appeal, so I had to take it over. It's now been perfected. It is going to be heard in May, at least at present schedule. The District Attorney has asked for an extension of four months because, obviously, he doesn't want the criminality, and I can tell you that I've just briefed this. The criminality which is alleged in this case is absolutely blatantly clear in the appellate case. Now, in this case, we have criminality of perjury with respect to the April 18, 2012, contempt complaint that had two counts, one for March 13, 2012, and one for April 4, 2012, a photograph in each case of a house. Now, it is clear that the judge was corrupted below, and I say that because there's complete evidence of that, that Vance has perverse control and influence over the criminal court, which was also proved by the fact that the criminal court refused to prosecute me at least twice in the normal course, and then powerful people, after I'd been told by the commander and deputy inspector of my precinct that there would be no prosecution because there was nothing wrong, I could continue to take photographs, which I did with the support of Speaker Quinn, Senator Duane, my community board, and borough president. I was merely exercising my First Amendment right, as this court recognized, in Berry and in Peratt, which was a progeny of that, my First Amendment right in my neighborhood of 20-some odd years, to petition my government to address zoning violations. Now, the First Amendment cries out, and the problem was the DOB, which enforces zoning, wanted to cave in to Bloomberg's view that the film industry should go where it wants and do what it wants, so they would not enforce zoning. So the community members, including Christine Quinn, who happened to live in Chelsea, we decided that we were going to have to document this, and so we did. And the first complaint just said he took photographs of commercial activities, which is obviously a First Amendment right. Mr. Corsini, you know that we're not a trial court, and we're not going to be able to decide the factual dispute that you have. No. You have a number of claims, and maybe if we parse them out, we can be sure we understand your position. To the extent that you're bringing claims based on the April 18th arrest. Now, as I understand the record, you were convicted of one charge stemming from that incident. And that usually forecloses challenges to false arrest and malicious prosecution on a charge for which there's been a conviction. So tell me what relief it is you want with respect to your claims stemming from that incident. Okay. Certainly, Your Honor. First of all, I was acquitted of the second charge. Right, but you stand convicted on one charge, and that usually means that there's then probable cause to support the arrest and the prosecution. Right. Now, the cases that I've cited indicate that until there has been a full hearing and an opportunity to be heard, including an appeal. So, for example, in Fogarty, Cameron v. Fogarty, it says that until it cites Broughton, which says that a conviction is only evidence, until there's a final upholding on appeal of that conviction, it's only evidence of probable cause. Now, this is a motion to dismiss. This is not even a summary judgment. So if it's evidence of it, and I come in and say, okay, yes, but we have indisputable evidence that the police officer, in concert and agreement with the complainant, committed indisputable perjury proved by her own video, and there wasn't probable cause, you can look, as I've said, at the protective order. It's vacant, meaning it has no stay-away provisions, no mention of photography, and the photograph was taken in front of my own building, whereas in order to get this prosecution, the arresting detective lied under oath, as did the complainant in supporting the complaint by deposition, that I was standing directly in front of her building. But what did you get convicted for? I got convicted for attempted contempt. They took a jury away from me. Right, which is different from the circumstances that you're saying there was perjury with respect to. It's a different charge. No, no, no, no. Am I blind by that, or am I missing something? No. I may not have been clear, Your Honor. Please. No. That charge of March 13th was for what? April 18th. I'm getting my dates mixed up. No, April 18th is the complaint. Yeah, okay. I'm sorry. The count was March 13th, the alleged violation. Now, that was the very day, the very day that another contempt complaint that was completely baseless was dismissed. So, the ADA called up, and this was all in the trial, the ADA called up the complainant and said, he's going to be out. So, she was stalking me, and you can tell in this video that she was stalking me, trolling for something, but she found nothing. So, she said I was in front of her building, which wasn't even precluded by the protective order, unlike another protective order. It was facially on its face. This prosecution had no basis whatsoever. It's clear from her own video that I was standing well in front of my own building, and I took a photograph of an individual who had assaulted me just to have evidence that he was an employee of hers. Now, there's no mention of photography, and in subsequent orders, there is mention of photography. In the April 18th complaint, the issue of the protective order said you cannot take photographs of the house under other conditions. Now, what does that mean? Other conditions? It means it wasn't included originally. And she testified in the criminal trial that I didn't take a photograph of a house. I took a photograph of her worker. Now, when the red light is on, it means your time is up. You've reserved three minutes. You can use them now, or you can save them until after we hear from the- I'm sorry that I wasn't more diligent in looking at the amber light, but I will save them. Okay, then we'll hear from the other side. Thank you. Thank you. Good morning. May it please the Court, Deborah Brenner on behalf of the Municipal Appellees. Probable cause supports the dismissal of this complaint in all respects, except for the Fourth Amendment search and seizure claim, which on its face is not a plausible claim because there's no allegation of a search or a seizure. Unless the Court has any questions, we'll be happy to wrestle with it. So the argument is that it's effectively a seizure because his quiet enjoyment of his property is disturbed. Do you want to address that? Well, Your Honor, that's an interesting and novel question. But the very novelty of it shows that, at the very least, the police officers had qualified immunity. This Court has never addressed the question. The Supreme Court has never addressed the question. And there's far from a robust consensus in any other circuits. In fact, most of the courts that have considered such questions have concluded that the Fourth Amendment is not implicated. Okay. Thank you. Thank you. All right. Mr. Corsini, you have your three minutes. I can't get the rest of hers? She didn't. First of all, I'll go back to where I was. So under Jennings, I think it is, and Cameron, and under Broughton, this conviction, where there's been an appeal, and if you please revisit those citations, where there's been an appeal, then it's not final. And in a criminal case in particular, you do not want to hold that against the defendant. So let's get to the next charge. What they kept doing. I believed in the First Amendment, and I went to Columbia Law School 45 years ago, and I'm disillusioned by the fact that this isn't so clear, but it's clear to Vance now, and he's very concerned about this in terms of the criminality. The Corporation Counsel committed crimes at my trial. Now, talking about a conspiracy, we have the police officer committing perjury in conjunction with the complainant, and at my trial, the Corporation Counsel called up one of the witnesses and said, you're being sued by Mr. Corsini to frighten him, and he came in shivering like a, I don't know, tree in the wind. And so that's criminal tampering with a witness. So what we have is certainly evidence of a conspiracy. Now, let's go to the next date, which is they kept saying, all right, April 4th, we know, she committed perjury because I proved that I couldn't have possibly been where she said I was to take a picture of a house that wasn't prohibited in the first place.  But the thing is, so we knew she was unreliable there. I'm saying, first of all, if it's evidence, and as Broughton says, it's evidence. It's not conclusive evidence. It's not definitive evidence, meaning it's a matter of law, until we get to find out what happens on appeal. So I have all this other evidence of perjury. When you say perjury, you're talking about what she told the police officers? No. She and the police officer both signed either a complaint or a deposition in support of the complaint. Right. But the police officers did it based on what she told them, right? No. No, Your Honor. What did the police officers base it on? The police officers, as I've said from day one, the police officer and the city are in agreement to do whatever is necessary to let Bloomberg then do whatever he wanted. That's a conclusive assertion on your part. No. May I address? I'm sorry to interrupt you. I'm just worried about my time. Go ahead. I want to get to your point. It's not conclusory because it's indisputable. Her video, if you look at it, she took a video. She was stalking me on the very day that another order got dismissed, and she was at the ready, stalking me, and she said that I was standing in front of her house when I took a photograph that wasn't prohibited. Standing in front of the house she thought was prohibited. It wasn't because this order was vacant. A prior order did say I couldn't stand in front of the house. But I didn't go in front of the house because I'm not a fool. So, I mean, I was careful. I'm a lawyer. I'm cautious. So I didn't go in front of the house. The video shows me clearly well in front of my building over a building away from hers. And they both admitted to trial that that was true. So it's indisputable that they committed perjury. Thank you. But can I get on? I'm going to take the case under advisement. Thank you very much. May I just make one quick statement? One sentence. Go ahead. Okay. Proustian? Meaning I can go on for a while. Let's take away the conviction and look at June 25, which is the — No, no. Now you're going to go into another issue. We have your position in your paper. No, no. We know that that one was decided in your favor. And that they knew about the perjury. We're going to take it under advisement. Thank you. Thank you. Thank you very much. Thank you. Thank you, Your Honor.